**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KHALID A. ARAFAT, | ) | CASE NO. 1:06CV2984 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| MAGGIE A. BEIGHTLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Petitioner, Khalid A. Arafat ("Arafat"), challenges the constitutionality of his conviction in the case of *State v. Arafat*, Cuyahoga County Common Pleas Case No. CR04-455793.  Arafat, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 13, 2006 with the United States District Court for the Northern District of Ohio.  On June 4, 2007, Respondent filed her Answer/Return of Writ.  (Doc. No. 10.)  Arafat filed his Traverse on June 13, 2007.  (Doc. No. 11.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Arafat's petition be DENIED.

## I.  Procedural History

### A.  Conviction

The Cuyahoga County Grand Jury charged Arafat, along with four co-defendants, with

one count of attempted murder in violation of Ohio Revised Code ("O.R.C.") § 2923.02, one count of felonious assault in violation of O.R.C. § 2903.11, one count of rape in violation of O.R.C. § 2907.02, and one count of tampering with evidence in violation of O.R.C. § 2921.12.[1] (Doc. No. 10, Exh. 1.)

Arafat pled "not guilty" to all charges and the matter proceeded to a jury trial on December 8, 2004.  (Doc. No. 10, Exh. 12.)  Prior to trial, Arafat, through defense counsel Thomas Conway, filed a Motion to Dismiss Repeat Violent Offender Specifications.  (Doc. No. 10, Exh. 6.)  The jury found Arafat guilty of felonious assault and tampering with evidence, but not guilty of attempted murder and rape.  (Doc. No. 10, Exh. 4.)  On January 4, 2005, the trial court sentenced Arafat to an eight year sentence for felonious assault and a five year sentence for tampering with evidence.  The sentences were to be served consecutively.  (Doc. No. 10, Exh. 5.) On May 23, 2005, the trial court granted Arafat's Motion to Dismiss Repeat Violent Offender Specifications.  (Doc. No. 10, Exh. 8.)

**B.      Direct Appeal**

On January 21, 2005, Arafat, represented by new counsel Catherine Hayes, timely filed a Notice of Appeal.  (Doc. No. 10, Exh. 9.)  On September 21, 2005, Arafat, through counsel, filed an amended brief and raised the following assignments of error: the evidence was insufficient to support a conviction; trial counsel was ineffective; the trial court's cumulative errors resulted in plain error; and prosecutorial misconduct.  (Doc. No. 10, Exh. 10.)  On April 17, 2006, the state appellate court affirmed Arafat's convictions but vacated his sentence and remanded the case for

---

[1]  The first three counts carried repeat offender specifications and notices of prior conviction.  Arafat's co-defendants were Athena Lemieux, Brandon Breeden, Nicholas Phipps, and Stacy Umstott.

re-sentencing.  (Doc. No. 10, Exhs. 12 & 13.)

On May 10, 2006, Arafat *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 10, Exh. 14.)  In addition to the four assignments of error raised before the state appellate court, Arafat raised the following issues: the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 violates his Due Process rights; and it was unreasonable, arbitrary, and/or unconscionable for the state to assess costs to Arafat.  (Doc. No. 10, Exh. 21.)  On August 2, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 10, Exh. 17.)

**C.      Re-Sentencing**

On May 31, 2006, Arafat was re-sentenced to consecutive sentences of seven years for felonious assault, four years for tampering with evidence, and three years of post-release control. (Doc. No. 10, Exh. 19.)  Also, the Court ordered Arafat to pay restitution and court costs.

**D.      Appeal of Re-Sentencing**

On July 3, 2006, Arafat, through new appellate counsel Thomas J. Hunt, timely filed a Notice of Appeal concerning the re-sentencing.  (Doc. No. 10, Exh. 20.)  Arafat argued that the imposition of consecutive sentences was unconstitutional and was disproportionate compared to the sentences of his co-defendants.  (Doc. No. 10, Exh. 21.)

On February 28, 2007, the state appellate court returned the matter to the trial court to clarify the disposition of the prior offender specifications contained in the trial court's journal entry.  (Doc. No. 10, Exh. 23.)  On March 27, 2007, the trial court issued a *nunc pro tunc* journal entry that omitted all references to prior offense specifications.  (Doc. No. 10, Exh. 24.)  As of the filing of Arafat's habeas petition, the state appellate court had not ruled upon Arafat's direct

3

appeal from his re-sentencing.  (Doc. No. 10, Exh. 26.)  Respondent contends that the pending

status of Arafat's state appeal does not affect the Court's review of Arafat's habeas petition

because the grounds for relief raised in Arafat's petition "have been exhausted in state courts and

[do not] involve his re-sentencing."  (Doc. No. 10 at 12.)

**E.      Federal Habeas Petition**

On December 13, 2006, Arafat filed a Petition for Writ of Habeas Corpus and asserted

the following grounds for relief:

> Ground one: Conviction obtained by the unconstitutional failure of
> prosecution to disclose to the defendant evidence favorable to defendant.

> Ground two: Ineffective assistance of counsel.  (Sixth and Fourteenth
> Amendment.)

> Ground three: Due Process, provisions of Article I, Section 16 of the
> Ohio Constitution, 14 Amendment U.S. Constitution.  The verdict was not
> supported by the weight of evidence.

> Ground four: Prosecutorial Misconduct [resulted in] plain error ... which denied
> Defendant a fair trial.  (Fourteenth Amendment U.S. Constitution.)

(Doc. No. 1.)

Arafat did not file a brief in support of his petition and his one paragraph Traverse contains only

a perfunctory argument.  Because the grounds set forth in Arafat's petition amount to conclusory

allegations with virtually no argument, the Court shall treat his petition as presenting the

arguments set forth in his Amended Brief on direct appeal that relate to the grounds for relief

raised in his petition.  (Doc. No. 10, Exh. 10.)

**II.  Summary of Facts**

The state appellate court summarized the facts underlying Arafat's conviction as follows:

> Jeffrey Phillips testified that he resides at the Bunker Hill Apartments.  At

4

approximately 4:30 a.m., he heard noises and saw a man on the ground with his pants around his legs and two males and two females standing over him. According to Phillips, the group was kicking the man on the ground and telling him to go home. Phillips recognized one of the females as a resident of apartment 102. One of the men had a blue bandanna on his head.

*** 

Officer James Imars testified that he went to the apartment of Stacy Umstott but no one answered the door. Later, [Arafat] exited the building and identified himself as "Mike Armand." According to Imars, [Arafat] indicated that he did not have any information about the attack. Jeffrey Phillips then waved Imars over and said that he observed a man in a blue bandana attack Russo. A short time later, defendant exited the building wearing a blue bandanna and the officers took him into custody.

*** 

Det. John Barsa testified that he recovered a Cleveland Cavaliers cap during a search of Umstott's apartment. He also authenticated numerous photographs.... A security camera was installed above the entrance....

With regard to the images taken by the security camera, Barsa testified that the digital images were not saved in chronological order but display the time at which the image was taken.

Norbert Friedrich, a part-owner of the apartments, testified that he is licensed in security installations and that he installed the security cameras at the buildings. The system is a video recorder system which has a central recorder with an 80 gigabyte hard drive.

Friedrich also testified that ... Stacy Umstott, a friend of [Arafat], resided in a basement level unit. With regard to the building occupied by Umstott, Friedrich testified that one security camera was installed on the adjacent building and is directed to the entranceway of Umstott's building. Another camera is above the doorway and directed at the inside security door, one is at the roof line, one is in the rear of the building, and one is in the laundry room. Images from each of the cameras were recorded on the hard drive of the computer and the time of day is imprinted on each image.

After North Royalton police notified him of the attack, he and Det. Stolarski then took the hard drive to Friedrich's home and made four CDs of the images.

According to Friedrich, the images were recorded in fifteen-minute intervals.

*** 

North Royalton Det. Jay Drake testified that he collected evidence, called Friedrich and spoke to Keven Daley and Jeffrey Phillips. Det. Drake also testified that the tape prepared by Det. Klein were true and accurate copies of the security camera images.

5

The tape was played for the jury and Det. Drake also testified to its contents.  The tape depicts [Arafat] entering the apartment at 4:07 a.m., Mario Russo coming from the adjacent building and walking in front of Umstott's living room picture window at 4:18 a.m.  Three minutes later, Nick Phipps comes out of the foyer, looks to his left and the bushes, and goes toward the parking lot. Phipps then turned abruptly and walked back to Umstott's building.  Next, [Arafat] pulls Russo from the bushes.  Two females are seen in the foyer at 4:23 a.m.  At 4:25 a.m. the tape depicts Russo on the ground with his pants down and at 4:29 it depicts Phipps in a white shirt and [Arafat] shirtless with a blue bandanna.

*** 

At 5:15, [Arafat] takes security camera 2 and brings it to Umstott's apartment.  Thirteen minutes later, an unknown man in a black shirt kicks Russo then enters the vestibule.  Finally, police arrive at 5:34 a.m.  They eventually spoke to defendant and he gave a false name and a false Social Security number.

*** 

Dr. John Como, a trauma surgeon with Metro, testified that Russo had facial swelling and lacerations, a closed fracture of the skull base with cerebral laceration and contusion, a laceration in his anus, a broken nose and a fractured maxillary sinus. He spent four days in intensive care and was later transferred to the rehabilitative unit.

*** 

Samantha Muscatello testified that [she later met up with her boyfriend] ... at Umstott's apartment and watched a movie.  The group noticed lights from a car which shone into the apartment. A few minutes later, Phipps left the apartment to get a CD.  When he returned, he said that there was a pervert outside.  The group then ran outside and the group began to attack him.  They returned to the apartment and, after the incident, [Arafat] wondered why Russo had been at the window with his pants down and was concerned about whether Russo was still alive. [Arafat] said that he knocked the guy out then left the apartment to check on him.  She then observed [Arafat] and Phipps pull Russo's pants down.

*State v. Arafat*, 2006-Ohio-1722, 2006 Ohio App. LEXIS 1592 (Ohio Ct. App. 2006); (Doc. No. 10, Exh 12.)

### III.  Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Arafat filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

6

326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).  As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

7

An incorrect state court decision may not be unreasonable under this standard.  *Id.* at 410-11.

For this reason, a federal habeas court may not find a state court's decision unreasonable "simply

because that court concludes in its independent judgment that the relevant state court decision

applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the federal

court must determine that the state court decision is an objectively unreasonable application of

federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-

court decisions."  *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10,

2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal

courts: Hands off, unless the judgment in place is based on an error grave enough to be called

unreasonable.")  The "unreasonable" requirement is a high bar.  *See Ruimveld*, 404 F.3d at 1010.

**A.      Admission of the "Padded" Video Recording**

All of Arafat's claims are based at least in part on his contention that the admission of a

compilation of video recordings retrieved from the surveillance cameras was improper.  (Doc.

No. 1.)  Arafat contends that the video recordings the prosecution submitted into evidence were

not true and accurate copies because they were altered or edited.  (Doc. No. 1.)  There is no

dispute that the admitted video recordings were not the original recordings and were an edited

compilation of recordings from several surveillance cameras.  The process used by the police

officers to compile the video recordings was the subject of extensive testimony.  Whether the

trial court erred by admitting the edited compilation of the video recordings in lieu of the

originals presents an issue of state evidentiary law.

It is well-established that alleged trial court errors in the application of state procedure or

evidentiary law, particularly regarding the admissibility of evidence, are generally not

cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *See Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

In addition, for purposes of federal habeas review, a constitutional error that implicates trial procedures is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had a substantial and injuries effect or influence upon jury's verdict). A petitioner must establish actual prejudice to warrant habeas relief. *See Clemmons*, 34 F.3d at 357-58.

The state appellate court found that the trial court did not err by admitting the edited video recordings into evidence and explained as follows:

> [T]he video played for the jury was altered to put the events recorded in the various volumes in chronological order and was also modified through a process called padding, wherein duplicate images are inserted between the photos taken by the security cameras at set intervals, in order to create a final product that

9

> approximates real time viewing.  Det. Drake also testified that the tape[s]
> prepared by Det. Klein were true and accurate copies of the security camera
> images.  Moreover, we find nothing about either of these processes which renders
> the video unreliable, and we therefore conclude that the trial court did not err in
> admitting it into evidence.

*Arafat*, 2006 Ohio App. LEXIS 1592 at ¶56.  Under Ohio law, "photographic evidence may be

admitted upon a sufficient showing of the reliability of the process or system that produced the

evidence."  Videotapes and photographs may be introduced into evidence upon a sufficient

showing that they accurately depicted conduct.  *See Midland Steel Prods. Co. v. Int'l Union,*

*United Auto., Aero. & Agric. Implement Workers, Local 486*, 573 N.E.2d 98, 105, 61 Ohio St. 3d

121 (Ohio 1991) (finding the same standard applies to video evidence).  Furthermore, Arafat's

trial counsel did not object to the admission of the edited video recordings and neither party

sought to introduce the originals of the video recordings, Exh. 4-A, into evidence.  (Tr. 771-72.)

Admission of the video recordings did not violate any clearly established federal law.

Arafat has failed to establish that the video recordings were unreliable and/or that the trial

court's admission of this evidence rendered the trial so fundamentally unfair as to constitute a

denial of federal rights.  Arafat's argument, therefore, is without merit.

**B.      Grounds One and Four: Prosecutorial Misconduct**

In grounds one and four, Arafat argues that the prosecutor engaged in misconduct.[2]

(Doc. No. 1.)  First, Arafat argues that the prosecution introduced as evidence a video recording

of the attack at the heart of the charges against him, but failed to disclose to the defendant or the

---

[2]  The Court construes the first and fourth assignments of error as one to the extent both
allege misconduct by  the prosecution.  However, ground four also contains claims that
are not properly characterized as prosecutorial misconduct, *i.e.*, claims pertaining to the
admission of evidence, jury instructions, his right to confront witnesses, and his sentence.
These claims will be considered separately in Part E, *infra*.

jury that the video recording was not a true copy of the original.  *Id*.  Arafat contends that the

edited video recording was inaccurate and misleading.  Further, Arafat contends that the

prosecution engaged in misconduct by indicting him for serious charges for which no probable

cause existed and by making false statements at trial.[3]  *Id*.

To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the

trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 642 (1974).  The Supreme Court has emphasized a series of

factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as

to amount to violation of due process:  (1) whether the comments were isolated or pervasive,

*Donnelly*, 416 U.S. at 646; (2) whether they were deliberately or accidentally placed before the

jury, *id.* at 647; (3) the degree to which the remarks had a tendency to mislead and prejudice the

defendant, *Darden v. Wainwright* , 477 U.S. 168, 182 (1986); *United States v Young*, 470 U.S. 1,

12 (1985); (4) whether the prosecutor manipulated or misstated the evidence, *Darden*, 477 U.S.

at 182; *Berger v. United States*, 295 U.S. 78, 84-85 (1935); (5) the strength of the overall proof

establishing guilt, *Darden*, 477 U.S. at 182; (6) whether counsel objected to the remarks, *id.* at

182- 83 & n.14; *Young*, 470 U.S. at 13; and (7) whether a curative instruction was given by the

court, *Darden*, 477 U.S. at 182; *Caldwell v. Mississippi*, 472 U.S. 320, 339 (1985).  These

factors also repeatedly have been identified by the Sixth Circuit in describing the tests for

---

[3]  Arafat's claim that the prosecutor failed to disclose the existence of exculpatory
evidence will not be considered.  First, this claim could have been raised on direct appeal
but was never raised and is, therefore, procedurally defaulted.  Also, Arafat fails to
develop this argument and it is not entirely clear what evidence Arafat believes is
exculpatory.  Although it seems that he is referring to the original video recordings, such
an argument is irreconcilable with Arafat's admission on direct appeal that he was
involved in the assault and struck the victim.  (Doc. No. 10, Exh. 10 at 14.)

prosecutorial misconduct. *See, e.g., Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999);

*United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999).

The state appellate court rejected Arafat's argument that the prosecution engaged in

misconduct by introducing edited video recordings, finding that no prejudicial error resulted

from the admission of the disputed videotape.  (Doc. No. 10, Exh. 12 at 38.)  As discussed in

Part A, *supra*, the admission of the video recordings did not violate any clearly established

federal law and did not deny Arafat a fair trial and due process of law.

Arafat also argues that the prosecution prejudiced the jury by presenting "an over-

indictment which contained four serious charges when no probable cause existed for rape and

attempted murder charges."  (Doc. No. 1.)  Neither Arafat's petition nor his appellate brief

before the state appellate court contain any argument explaining how this alleged misconduct is a

violation of clearly established federal law as determined by the Supreme Court.  "Issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. . . ."  *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997); *accord*

*Maldonado v. Wilson,* 416 F.3d 470, 478 (6th Cir. 2005) (finding that petitioner forfeited a claim

that was not fully developed and referred to only indirectly), *citing United States v. Layne*, 192

F.3d 556, 566 (6th Cir. 1999).  Furthermore, "[so] long as the prosecutor has probable cause to

believe that the accused committed an offense defined by statute, the decision whether or not to

prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his

discretion."  *Wayte v. United States*, 470 U.S. 598, 607-608 (1985) ("[T]he decision to prosecute

is particularly ill-suited to judicial review.") (citations omitted).  Arafat's conclusory and

unsupported proposition that the charges of rape and attempted murder were not supported by

12

probable cause is insufficient.

Arafat contends that the prosecution made the following false statements during opening statements: Arafat would have continued to hurt the victim without the intervention of another member of the group; Arafat "pummeled" the victim; and "there had been talk of doing something with the body somewhere off West 73rd."  (Doc. No. 10, Exh. 10 at 37; Tr. 216-17, 227.)  It is not improper for a prosecutor to comment upon evidence he expects to be proffered at trial.  *See, e.g., Frazier v. Cupp*, 394 U.S. 731, 736-37 (1969) (finding no misconduct occurred where prosecutor referred to the expected testimony of a witness who never testified after invoking his Fifth Amendment rights); *State v. Ballew*, 667 N.E.2d 369, 76 Ohio St.3d 244, 255 (Ohio 1996) (prosecutors are typically entitled to considerable latitude in opening and closing statements).

The state appellate court found that the evidence presented at trial supported the statement that Arafat "pummeled" the victim.  (Doc. No. 10, Exh. 12 at 38.)  The transcript reveals that Arafat did not object to any of these statements at the time they were made.  Moreover, assuming *arguendo* that these statements were not supported by the testimony presented at trial, the trial court's jury instructions expressly reminded the jury that opening statements are merely an outline of what each side expected the evidence to show but do not constitute evidence.  (Tr. 904.)  These instructions were sufficient to cure any alleged misconduct and render the trial fair.

For the foregoing reasons, the state court's finding that Arafat was not denied of his right to a fair trial due to alleged prosecutorial misconduct is a reasonable application of clearly established federal law.

13

**C.      Ground Three: Sufficiency of the Evidence**

In ground three of his petition, Arafat argues that his conviction was not supported by the weight of the evidence because the video recordings introduced at trial were not true and accurate copies of the original video recordings.  (Doc. No. 1.)  On direct appeal before the state appellate court, however, Arafat argued that his convictions were both against the manifest weight of the evidence *and* that they were not supported by sufficient evidence.  (Doc. No. 10, Exh. 10 at 7-17.)  Although Arafat's petition characterizes his third ground for relief as a claim that his conviction was "not supported by the weight evidence," this Court reviews this claim solely as an "insufficient evidence" claim because manifest weight claims are non-cognizable on federal habeas review.  *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).   In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).

Federal courts are required to give deference to factual determinations made in state court.  *See Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact

14

limits the nature of constitutional sufficiency review.)  Further, in reviewing the sufficiency of a conviction, "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70.

A jury convicted Arafat of felonious assault in violation of O.R.C. § 2903.11(A)(1), which prohibits a person from causing "serious physical harm to another."  Even without the disputed videotape, there is sufficient evidence in the record to allow a rational trier of fact to find beyond a reasonable doubt that Arafat feloniously assaulted the victim.  The prosecution presented the testimony of eye-witness Shannon Muscatello, who was with Arafat and their group of friends that night.  (Tr. 718-758.)  She testified as follows.  She saw the group pull the victim from behind the bushes.  (Tr. 735.)  Although the victim swung first, she was unsure whether he landed any of his punches.  (Tr. 743-44.)  Arafat was the first person to punch the victim and did so "quite a few" times.  (Tr. 736.)  Arafat continued punching the victim after he had fallen to the ground.  *Id.*

In his Amended Brief before the state appellate court, Arafat claimed that the evidence was insufficient to demonstrate that the victim suffered "serious physical harm" as defined by O.R.C. § 2901.01(A)(5).  (Doc. No. 10, Exh. 10 at 8-10.)  The state appellate court found that the evidence of record showed the victim sustained a closed skull fracture, broken nose, fractured maxillary sinus, and lacerations to his face and anus; and the victim spent four days in the intensive care unit and was then transferred to the hospital's rehabilitation unit.  (Doc. No. 10, Exh. 12 at 18.)  The state appellate court found that these injuries are sufficient to meet the requirement of "serious physical harm."  *Id.*, *citing State v. DeRose*, 2002-Ohio-4357, 2002 Ohio

15

App. LEXIS 4503 at ¶60 (Ohio Ct. App. 2002) (fractured skull, bleeding and bruising of the brain, hearing loss, and nine-day hospitalization satisfied serious physical harm requirement).

There was ample evidence to support a finding satisfying all the elements of a felonious assault as defined by Ohio law.  Accordingly, there was sufficient evidence in the record to allow a rational trier of fact to find that Arafat was guilty of felonious assault.  Therefore, the state appellate court's decision did not violate Arafat's due process rights and his claim is without merit.

The jury also convicted Arafat of tampering with evidence in violation of O.R.C. § 2921.12(A)(1), which prohibits one from altering, destroying, concealing, or removing any record, document, or thing, with purpose to impair its value or availability as evidence in a proceeding or investigation.  This conviction is based on Arafat's removal of a surveillance camera.  In his Amended Brief before the state appellate court, Arafat argues that the evidence was insufficient to support a tampering conviction because the removal of the camera did not damage any of the recordings of the event and the trial testimony showed that the camera's video recordings were safely retained on a hard drive.  (Doc. No. 10. Exh. 10 at 13-14.)  Further, Arafat argues that his removal of the surveillance camera did not ultimately hinder the apprehension of the victim's assailants.  *Id*.  The state appellate court found that Arafat's argument was unavailing because the statute does not require the actual destruction of stored images or the ultimate frustration of an investigation.  (Doc. No. 10, Exh. 12 at 19.)  Indeed, the plain language of the statute prohibits removal of a thing "with *purpose* to impair its value or availability as evidence" and does not require actual impairment.  See O.R.C. § 2921.12 (emphasis added).  Thus, Arafat's argument lacks merit.

16

**D.      Ground Two: Ineffective Assistance of Counsel**

In ground two of his petition, Arafat claims that he was deprived of the effective assistance of trial counsel.  (Doc. No. 1.)  Arafat alleges that he was denied his right to effective assistance of trial counsel because trial counsel: (1) failed to request the original video recordings from the prosecution; (2) failed to request an instruction on the use of force; (3) failed to ask for a jury instruction regarding the testimony of an accomplice; and (4) should not have withdrawn his motion to suppress Arafat's statement.  (Doc. No. 1.)

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's conduct fell so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the proceeding unfair. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Deficiencies in counsel's performance must "be prejudicial to the defense in order to constitute ineffective assistance." *Id.* at 692.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  That is to say, it must be demonstrated that counsel's performance "caused the defendant to lose what he otherwise would probably have won" and that it was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Disagreements by a defendant with tactics and/or strategies will not support a claim of

17

ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland,* 466 U.S. at 689; *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Vague or conclusory allegations are insufficient to establish the prisoner's burden that counsel's performance was deficient and that the defendant suffered prejudice as a result. *See United States v. Cronic*, 466 U.S. 648, 666 (1984) (ineffective assistance of counsel claims can only be made out by pointing to specific errors made by counsel).

Arafat has made no showing to support his conclusory allegation that his trial counsel failed to request the original video recordings.  A conclusory claim, unsupported by specific facts, is wholly insufficient to allege constitutional defects in a criminal proceeding and does not provide a basis for habeas relief. *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir.1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief).  In his Amended Brief before the state appellate court, Arafat argued that his trial counsel also was ineffective for failing to object to the admission of the edited video recordings.  (Doc. No. 10, Exh 10 at 21-21.)  As the state appellate court found that the admission of the video recordings was not improper under Ohio evidentiary law, trial counsel's failure to object to its admission would not have prejudiced Arafat and his representation did not fall below acceptable standards.

Arafat's argument that his trial counsel should have requested "an instruction on the use of force which was not deadly" is an undeveloped argument and is waived.  Pursuant to O.R.C. § 2903.11(A)(1), the felonious assault statute, "[n]o person shall knowingly ... [c]ause serious physical harm to another...."  Arafat's argument misses the point.  The trial court's jury

18

instructions expressly stated that to find Arafat guilty of felonious assault the jury must find that

he knowingly caused serious physical harm to the victim.  (Tr. 917-18.)  The trial court

explained the cause, knowledge, and serious physical harm elements of the crime.  *Id.*   There is

no requirement in the statute, nor one given in the jury instructions, that requires the use of

deadly or "non-deadly" force to sustain a conviction for felonious assault.  The trial court

properly instructed the jury when it defined the elements of serious physical harm.

Arafat also argues that his trial counsel was ineffective for failing to ask for a cautionary

instruction regarding the testimony of Muscatello.  (Doc. No. 10, Exh. 10 at 18-20.)  O.R.C. §

2923.03(D) requires the court to give the following instruction when the testimony of an alleged

accomplice is proffered into evidence:

> The testimony of an accomplice does not become inadmissible because of his
> complicity, moral turpitude, or self-interest, but the admitted or claimed
> complicity of a witness may affect his credibility and make his testimony subject
> to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the
> witness stand, to evaluate such testimony and to determine its quality and worth
> or its lack of quality and worth.

The state appellate court found that Muscatello's conduct did not satisfy the statutory

definition of complicity.  (Doc. No. 10, Exh. 12 at 22.)  The state appellate court further

explained that because Muscatello was never charged in connection with the assault on the

victim and was not offered any deal in connection with this matter, the cautionary instruction

was not warranted.  *Id.*  The failure of trial counsel to request a cautionary instruction that was

not mandated by Ohio law is not conduct that is so deficient and prejudicial to Arafat as to

render the entire proceeding unfair.

Finally, Arafat argues that trial counsel should not have withdrawn his motion to

suppress Arafat's statement.  (Doc. No. 10, Exh. 10 at 20.)  Arafat argued that he was not

informed of his *Miranda* rights prior to making a statement to the police.  *Id.*  The state appellate

court found that "the [audio] tape clearly indicates that Det. Drake read defendant his rights and

had defendant read along on a preprinted form which defendant also signed."  (Doc. No. 10, Exh.

12 at 22; Tr. 635-37.)  Factual determinations by state courts are entitled to a presumption of

correctness.  *See House*, 283 F.3d at 37.  Counsel's withdrawal of the suppression motion did not

render his representation ineffective.  Moreover, Arafat cannot show that he was prejudiced by

counsel's withdrawal of the motion.

For the foregoing reasons, Arafat's argument that he was deprived the effective

assistance of trial counsel is without merit.  None of the alleged deficiencies in trial counsel's

performance, either alone or cumulatively, prejudiced Arafat in the defense of his case.

**E.      Ground Four: Cumulative and Plain Errors**

In ground four of his petition, Arafat claims that he was denied his right to a fair trial due

to cumulative and plain errors committed by the trial court.  (Doc. No. 1.)  Arafat alleges that the

trial court committed the following errors: (1) denying his motion for a jury instruction on the

lesser included offense of aggravated assault; (2) denying his right to confront witnesses by

limiting defense counsel's ability to challenge the credibility of witnesses, establish a defense, or

establish evidence of provocation; (3) allowing a police detective to narrate the video recording;

and (4) failing to give a mandatory jury instruction pursuant to O.R.C. § 2923.03(D) regarding

the testimony of an accomplice.[4]  (Doc. No. 1.)

_____

[4] Although Arafat's petition briefly raises an argument that his sentence violates *Blakely
v. Washington*, 542 U.S. 296 (2004), Arafat prevailed on this argument on direct appeal
and his sentence was vacated and remanded for resentencing.  Arafat later appealed his

None of the errors alleged by Arafat, except for the allegation that he was deprived of his right to confront witnesses, are founded on alleged violations of clearly established federal law. Violations of state law are an inappropriate basis for the grant of a writ of habeas corpus, as errors of state law, without more, may not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting that only where a state law violation is also a violation of federal law may a petitioner obtain federal habeas relief).

Thus, the only cognizable claim is Arafat's argument that he was denied his Sixth Amendment right to confront witnesses against him by the limitations placed on defense counsel's ability to challenge the credibility of witnesses, establish a defense, or establish evidence of provocation. The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The purpose of the Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999). "Confrontation Clause cases are subject to harmless error analysis on habeas review." *Robinson v. Stegall*, 48 Fed. Appx. 111, 113 (6th Cir. 2002), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see also O'Neal v. McAninch*, 513 U.S. 432 (1995) ("When a federal habeas court finds a

---

resentence in state court, a matter that was still pending at the time this petition was filed. Respondent contends that Arafat has not raised any ground for relief that involves his resentencing. The Court construes the sentencing claim in Arafat's petition as raising the same argument he raised on direct appeal, an issue that is now moot. To construe his sentencing claim otherwise, would render his petition a mixed petition with an unexhausted claim and require dismissal of the entire petition.

21

constitutional trial error and is in grave doubt about whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict,' the error is not harmless, and the petitioner must win..."); *Norris v. Schotten*, 146 F.3d 314, 330-331 (6th Cir. 1998) (habeas relief only will be granted where the error rises to the level of being a denial of fundamental fairness).

Based on Arafat's arguments before the state appellate court, it appears that he is challenging the trial court's rulings that prevented him from cross-examining any witness on matters that would tend to demonstrate the following: prior to the assault, the victim was masturbating near the window of a minor child who is Arafat's niece; the victim was not having an epileptic attack as insinuated by the prosecution; the victim had been engaged in crime to finance a cocaine habit; and the police eventually identified the person on the video recording to whom witnesses referred to at trial as "black shirt."  (Doc. No. 10, Exh 10 at 23-27.)

The trial court did not allow the introduction of Stacey Umstott's statement that suggested the victim was masturbating by the window because it was hearsay, did not fall under the statement against interest exception, and was barred by Ohio's rape shield law.  (Tr. 668-69; 728-31.)  Without deciding whether the trial court's rulings violated Arafat's right to confront witnesses, for the reasons stated below, the Court finds that any error that may have ensued from the limitations imposed on defense counsel constitute harmless error.  The only relevance of the excluded "facts" is whether the victim's actions were sufficient to constitute a serious provocation that would have justified a jury instruction on the less serious offense of aggravated assault as defined by O.R.C. § 2903.12.[5]

---

[5]  Pursuant to O.R.C. § 2903.12, "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using

However, even if the victim was engaged in the activity alleged by Arafat, such conduct, as a matter of law in Ohio, does not constitute a serious provocation.  Serious provocation must bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.  *See State v. Deem*, 40 Ohio St. 3d 205, 211, 533 N.E.2d 294 (Ohio 1988) (citations omitted).  The test for whether a provocation is sufficiently serious has both objective and subjective components.  *See State v. Shane*, 63 Ohio St. 3d 630, 634, 590 N.E.2d 272 (Ohio 1992).  No matter how disturbing and inappropriate the victim's alleged conduct may have been, serious provocation requires more than non-violent actions or a missed swing.  *See, e.g., State v. Koballa*, 2003-Ohio-3535 ¶10, 2003 Ohio App. LEXIS 3239 (Ohio Ct. App. 2003) (court found that evidence that victim grabbed the defendant's testicles and arm did not constitute serious provocation necessary to warrant aggravated assault jury instruction); *State v. Pack*, 1994 Ohio App. LEXIS 2733 (Ohio Ct. App. 1994) (finding that "a mere shove and a swing are insufficient as a matter of law to constitute serious provocation reasonably sufficient to warrant a jury instruction as to aggravated assault"); *State v. Poe*, 2000 Ohio App. LEXIS 4827, 2000-Ohio-1966 (Ohio Ct. App. 2000) (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation); *State v. Bynum*, 2000 Ohio App. LEXIS 377 (Ohio Ct. App. 2000) (words do not constitute legally sufficient provocation to incite the use of physical force).

Arafat also argues that he was precluded from cross-examining the victim regarding the victim's history of cocaine abuse and from introducing evidence the victim was not having an epileptic attack as insinuated by the prosecution.  As the victim testified that he had no memory

---

deadly force, shall knowingly ... [c]ause serious physical harm to another...."

23

of the day during which the assault occurred, the victim's testimony was largely superfluous and unnecessary to secure Arafat's conviction on any charge.  Therefore, any error by the court in precluding this testimony would have been harmless.

In addition, Arafat argues that he was prevented from eliciting testimony that tended to show law enforcement officials were not hindered in their attempts to identify an assailant referred to as "black shirt."  (Doc. No. 10, Exh. 10 at 13-14.)  Arafat appears to believe that a conviction for tampering with evidence contains an element requiring the state to prove that Arafat's actions successfully impeded an investigation.  As discussed in Part C of this report and recommendation, *supra*, the tampering statute does not contain such a requirement.  Therefore, even if the trial court erroneously prevented cross-examination on this issue, the error would have been harmless because the testimony would have been irrelevant.

For the foregoing reasons, ground four of Arafat's petition lacks merit.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Arafat's Petition be DENIED.

/s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 30, 2007

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**